```
 1              IN THE UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF OKLAHOMA
 2

    SISTERS OF MERCY HEALTH        )
 3  SYSTEM, ST. LOUIS, INC.        )
              Plaintiff,           )
 4                                 )
                                   )
    VS.                            )  CASE NO. CIV-05-115-F
 5                                 )  CONFIDENTIAL-UNDER SEAL
                                   )
 6  G. PAUL KULA, M.D., an         )
    individual, and PATRICIA       )
 7  BACHHOFER, an individual,      )
                                   )
 8            Defendants.          )

 9              DEPOSITION OF BOBBY THOMPSON

10              TAKEN ON NOVEMBER 8, 2005

11              ON BEHALF OF THE DEFENDANT

12              IN ARDMORE, OKLAHOMA

13  APPEARANCES:

14      MR. CHRIS L. FOX, Attorney at Law, HERON, SWEET &
    FOX, 2601 Northwest Expressway, Suite 707W, Oklahoma
15  City, Oklahoma 73112, appearing on behalf of the
    Plaintiff.
16
        MR. MICHAEL G. SMITH, Attorney at Law, SMITH,
17  SHEW, SCRIVNER & CORBIN, 120 E. 14th Street, P.O. Box
    1373, Ada, Oklahoma 74821-1373, appearing on behalf of
18  the Defendant.

19      MR. CHARLES J. WATTS and MR. JOHN EDWARDS,
    Attorneys at Law, WATTS & EDWARDS, 1001 Northwest 63rd
20  Street, Suite 101, Oklahoma City, Oklahoma 73116,
    appearing on behalf of the Defendant.
21
        MR. RYAN WILSON, Attorney at Law, HARTZOG,
22  CONGER, CASON & NEVILLE, 201 Robert S. Kerr Avenue,
    1600 Bank of Oklahoma Plaza, Oklahoma City, Oklahoma
23  73102-4216, appearing on behalf of the Deponent Bobby
    Thompson.
24

25  REPORTED BY:  SUSAN G. STOTTS, CSR
```

PLAINTIFF'S EXHIBIT E

**STEVE MEADOR & ASSOCIATES**
318 NW 13th Street, Oklahoma City, Oklahoma 73103
(405) 232-4114  (800) 385-4114  Fax (405) 232-1060

Case 5:04-cv-00969-F   Document 49-5   Filed 11/30/06   Page 2 of 6

Bobby Thompson - November 8, 2005
Sisters of Mercy vs. Kula - CIV-05-115-F
14

1    there.
2    Q.    Did you inquire what that problem was?
3    A.    Yes, sir.
4    Q.    What was it?
5    A.    There was some alleged allegations made
6    against him related to some relationships with some
7    of his co-workers, was what was reported to me.
8    Q.    Well, can you be more specific than that?
9    A.    I don't recall all the details.
10   Q.    When you checked -- did you check with
11   the licensure board?
12   A.    Yes, sir.
13   Q.    Did you -- now, you've told me about one
14   source.  That's previous employers.  You've also
15   told me about the National Physicians Data Bank?
16   A.    Right.
17   Q.    What did you find in the National
18   Physicians Data Bank?
19   A.    I do not recall.
20   Q.    Were you aware, when you hired Dr. Kula,
21   that he had a history of sexual misbehavior with
22   his patients or some of his patients?
23   A.    With one patient, yes, sir.
24   Q.    So you hired Dr. Kula knowing that he had
25   a sexual relationship with one patient?

Case 5:04-cv-00989-F   Document 49-5   Filed 11/30/06   Page 3 of 6

Bobby Thompson - November 8, 2005
Sisters of Mercy vs. Kula - CIV-05-115-F
15

```
 1        A.    Yes, sir.
 2        Q.    You know that's reprehensible and
 3   abhorrible conduct, don't you?
 4        A.    No, sir.
 5        Q.    Are you aware that this sexual
 6   relationship with the patient was generated through
 7   the physician-patient relationship with Dr. Kula?
 8        A.    Yes, sir.
 9        Q.    You know he ultimately divorced his wife
10   and married his patient?
11        A.    Yes, sir.
12        Q.    And you considered that and weighed that
13   in your decision to accept Dr. Kula to counsel
14   female patients as well as male patients; is that
15   correct?
16        A.    Yes, sir.
17        Q.    Did you ascertain the details of how
18   Dr. Kula got into a sexual relationship with his
19   patient?  And I'm referring to his wife now.
20        A.    Yes, sir.
21        Q.    What were you told?
22        A.    I interviewed both he and his wife at that
23   time.
24        Q.    Did you ascertain that the sexual
25   relationship developed out of the physician-patient
```

Case 5:04-cv-00965-F   Document 49-5   Filed 11/30/06   Page 4 of 6

Bobby Thompson - November 8, 2005
Sisters of Mercy vs. Kula - CIV-05-115-F

16

```
 1   relationship?
 2        A.   I don't recall.
 3        Q.   Well, that's a pretty important factor,
 4   isn't it?
 5        A.   Yes, sir.
 6        Q.   Now, I believe -- I'll be corrected if
 7   I'm wrong, but I think Dr. Kula has even admitted
 8   that it arose in the context of a physician-patient
 9   relationship; is that your memory?
10        A.   I don't have any reason not to believe
11   that's true, and I made that assumption during the
12   interview process.
13        Q.   Why didn't that cause you some hesitation
14   in hiring this doctor?
15        A.   Because anytime you find anything on a
16   doctor that's of any question, you want to delve
17   into that further.
18        Q.   I don't think I made myself clear, and I
19   apologize.  Why did you hire a psychiatrist that
20   you know had a history of sexual misconduct with a
21   patient?
22        A.   After pretty thorough investigation by
23   both myself and the credentials committee of the
24   hospital, we believed that he was okay at this
25   point.
```

Bobby Thompsen - November 8, 2005
Case 5:04-cv-00969-F   Document 49-5   Filed 11/30/06   Page 5 of 6
Sisters of Mercy vs. Kula - CIV-05-115-F
17

1   Q.   Well, if -- and that's an italicized
2   word.  If the allegations of my client are correct,
3   then you will have been wrong.
4   A.   Yes, sir.
5   Q.   What did the Physicians National Data
6   Bank show you regarding his licensure --
7   A.   That he had had a restriction on his
8   license at one time.
9   Q.   What was the restriction?
10  MR. FOX:  Object to the extent that the
11  National Practitioner Data Bank information is
12  confidential and privileged by federal law.  I'd just
13  like to note that for the record.
14  MR. SMITH:  You may answer.
15  THE WITNESS:  I do not recall the details,
16  but we've discussed the allegations, and I was aware
17  of it because he had divulged that as a part of his
18  application, and it was no different than what he had
19  divulged.
20  Q.   (By Mr. Smith)  And you knew that his license
21  had been suspended?
22  A.   Yes, sir.
23  Q.   Did that cause you any concern?
24  A.   Yes, sir.
25  Q.   But you hired him anyway?

Case 5:04-cv-00969-F   Document 49-5   Filed 11/30/06   Page 6 of 6

Bobby Thompson - November 8, 2005
Sisters of Mercy vs. Kula - CIV-05-115-F

19

1   the hospital, Norman Regional Hospital?
2       A.   I've seen none of that, only what he
3   divulged to us.  That was not shared with us.
4       Q.   What did he divulge to you that he had
5   done sexually or alleged to have done sexually
6   inappropriate at the hospital?
7       A.   As I recall, he was alleged to have made
8   some suggestive remark to one of the employees
9   there.
10      Q.   Sexually suggestive remark?
11      A.   Yes, sir.
12      Q.   Were you aware of any allegation of him
13  performing breast exams and/or vaginal exams on
14  psychiatric patients?
15      A.   No, sir.
16      Q.   Did you inquire in that regard?
17      A.   Not specific to that question, but we
18  inquired, and Norman hospital only released to us
19  certain limited information.
20      Q.   And that was not among the information?
21      A.   No, sir.
22      Q.   Were you informed of his outburst of
23  cursing and denunciation of female employees?
24      A.   No, sir.
25      Q.   Do you feel that the Norman hospital